774 F.2d 1162
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James G. Edmiston, Plaintiff-Appellant,
v.
United States of America, Defendant-Appellee.
 No. 84-5502
 United States Court of Appeals, Sixth Circuit.
 9/10/85
 
 M.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: ENGEL and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff-appellant James G. Edmiston appeals from a decision of the district court finding him liable under Section 6672(a) of the Internal Revenue Code, I.R.C. Sec. 6672(a) (1982), for unpaid federal income and social security taxes withheld from the wages of employees. Edmiston asserts on appeal that the evidence produced at trial was insufficient to establish his liability. We hold that the findings of fact of the district court are not clearly erroneous and, accordingly, affirm.
 
 
 2
 Although there is a direct conflict in testimony concerning many pertinent matters, the following facts are uncontroverted. Edmiston and one Dave Burgess entered into an agreement to acquire and market certain master records of popular songs performed by Gene Autry. As a result, Republic Records, Inc., a Tennessee corporation, was formed in March, 1978 with offices in Nashville, Tennessee. Edmiston became the treasurer and director of finance, while Burgess assumed the positions of president, chairman of the board, and director of creative affairs. Each owned fifty percent of the corporate stock, although Edmiston provided all of the financing for the company.
 
 
 3
 Corporate accounts were maintained at two Nashville banks. In addition, Republic Records, Inc. established an account at the Bank of Columbia Falls (the 'Bank'), where Edmiston was the president, located in Columbia Falls, Montana. The corporation entered into a revolving credit and security agreement with the Bank, an indebtedness while was later formalized by an interest-bearing note in the principal amount of $200,000, dated March 22, 1979 and due September 18, 1979. After the corporation experienced increasing financial difficulties, a loan for $550,000, personally guaranteed by Mr. Edmiston, was obtained from Nordic American Bank on May 10, 1979. A portion of the proceeds of the loan was to be used to pay delinquent federal withholding taxes. Edmiston immediately used $203,698.60 of the loan proceeds to liquidate the indebtedness owed to the his bank, even though the note had not yet matured. The balance of $321,301.40 was deposited in the Bank to the credit of the company. However, two checks, totaling $18,580.93, dated May 11, 1979, and payable to the Internal Revenue Service (the 'IRS') were dishonored; they were returned stamped 'two signatures required.'
 
 
 4
 Throughout 1979, Edmiston extended credit to the company by personally guaranteeing overdrafts for corporate checks written on the account at his Bank. Nevertheless, the corporate situation worsened throughout the remainder of the year. In the fall of 1979, Edmiston dispatched a paid agent, Scott Miller, to Nashville to examine the books and records of the company, assess the company's financial situation, and generally protect his interests. In October, 1979, while Mr. Miller was in Nashville, an IRS agent visited the company to discuss the unpaid federal income and social security taxes. In November, 1979, another check drawn in favor of the IRS was also dishonored by the Bank, this time for insufficient funds. Nevertheless, in November, 1979, Edmiston approved an overdraft in order to pay the salaries of company employees. Shortly thereafter, in December, 1979, the Republic Records, Inc. account at the Bank was closed by Edmiston by his paying the overdraft that existed at that time and reducing the balance in the account to zero. Burgess caused a petition in bankruptcy on behalf of the corporation to be filed in January, 1980.
 
 
 5
 The IRS subsequently made assessments against Edmiston pursuant to I.R.C. Sec. 6672(a) (1982) with respect to unpaid withheld employee income and social security taxes for the four calendar quarters of 1979. Edmiston disputed this liability, resulting in the present litigation. At a bench trial, the district court held in the favor of the United States in the amount of $31,985.29, plus interest.
 
 
 6
 Sections 3102(a) and 3402(a) of the Internal Revenue Code of 1954, I.R.C. Secs. 3102(a), 3402(a) (1982), require employers to withhold income and social security taxes from the wages of their employees. An employer may be held liable for nonpayment of these required withholding taxes if he is determined to be a 'responsible person' and his failure to collect, truthfully account for, and pay over such taxes is deemed 'willful.' McGlothin v. United States, 720 F.2d 6, 8 (6th Cir. 1983); Maggy v. United States, 560 F.2d 1372, 1374 (9th Cir. 1977), cert. denied, 439 U.S. 821 (1978); I.R.C. Sec. 6672 (1982). A 'responsible person' is any person associated with the corporation who has sufficient control over the disbursement of corporate funds so as to be able to prevent a default in the payment of the taxes due the Government. Adams v. United States, 504 F.2d 73, 75 (7th Cir. 1974); Mueller v. Nixon, 470 F.2d 1348, 1350 (6th Cir. 1972), cert. denied, 412 U.S. 949 (1973). Such a person acts 'willfully' if he knows of an unpaid liability and voluntarily, consciously, and intentionally fails to collect and pay over the monies due and owing. Anderson v. United States, 561 F.2d 162, 166 (8th Cir. 1977); Braden v. United States, 442 F.2d 342, 344 (6th Cir.) (per curiam), cert. denied, 404 U.S. 912 (1971). For example, a responsible person acts 'willfully' if he knows of an unpaid tax liability and has the ability to cause payment, but nevertheless prefers other creditors to the Government when paying debts out of an available fund. Maggy, 560 F.2d at 1375.
 
 
 7
 A district court's findings with regard to whether or not an individual is a 'responsible person' or acted 'willfully' under Section 6672(a) are findings of facts reviewable under the clearly erroneous standard. Sinder v. United States, 655 F.2d 729, 731 (6th Cir. 1981) (per curiam); Braden, 442 F.2d at 343-44; Fed. R. Civ. P. 52(a). Under this standard, a reviewing court may not set aside the findings of a lower court 'simply because it is convinced that it would have decided the case differently.' Anderson v. City of Bessemer City, North Carolina, 105 S. Ct. 1504, 1511 (1985). Furthermore, a reviewing court must give great deference to the fact finder's determination regarding the credibility of witnesses. Anderson, 105 S. Ct. at 1512. Nevertheless, an appellate court may reverse a trier of fact if, on a review of the entire evidence, it 'is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 8
 Edmiston's deposition, trial testimony, and brief paint a picture of him as little more than an investor in Republic Records, Inc., with insignificant control over the management of the business, financial or otherwise. The testimony of the Government's witnesses, however, portrayed Edmiston's role in corporate financial affairs in an entirely different light. Both Mr. Burgess and Mr. R. David Ludwick, the company attorney, secretary, and director of legal affairs, testified to events at a meeting in early 1978 (when the company was being formed), which indicated that Edmiston rejected the establishment of the position of company comptroller and stated that all financial affairs would be handled from his office in Montana. Burgess testified that he talked with Edmiston on almost a daily basis, discussed which bills, accounts receivable and accounts payable were pending, and concurred with Edmiston regarding which creditors should be paid. Evidence was presented which indicated that Edmiston made unilateral decisions regarding which checks to honor and when to permit overdrafts in the corporate account at the Bank. In addition, Burgess maintained that Edmiston was aware that one of the purposes for obtaining the Nordic American Bank loan was to obtain the money needed to pay the IRS and that both men had discussed the debts owed the Government in May or June of 1979, during the time when Edmiston was applying corporate funds to pay other creditors, including his own bank.
 
 
 9
 Moreover, both Mr. Burgess and Ms. Barbara Luckett, the company bookkeeper, testified that no corporate policy requiring two signatures on checks had ever been instituted. Burgess' testimony alleged that the dishonoring of the first two IRS checks in May, 1979, was at the initiation and direction of Edmiston, who intentionally employed the 'two signatures' requirement as an artifice to avoid paying the Government.
 
 
 10
 Based upon this testimony, the district court concluded that Edmiston was a 'responsible person' under Section 6672 by virtue of his position as treasurer and director of finance for the company, his ability to determine which creditors to pay by granting or withholding overdraft protection, and his unilateral exercising of power in matters of financial affairs. The district court also determined that Edmiston acted 'willfully' in failing to pay the withholding taxes since he knew of the tax liability, but nonetheless prevented payment to the Government and concomitantly preferred other creditors, including his own bank, over the obligation to the United States.
 
 
 11
 Upon review of the entire record, we conclude that the district court's findings are not clearly erroneous.
 
 
 12
 The judgment of the district court is affirmed.